632 A.2d 876

**COMMONWEALTH ex rel. Michelle BRENDEL, Appellee,**

**v.**

**John A. BRENDEL, Appellant.**

Superior Court of Pennsylvania.

Argued June 23, 1993.

Filed Sept. 16, 1993.

Reargument Denied Nov. 29, 1993.

320

Joseph M. Lamonaca, West Chester, for appellant.

Paul J. Ryan, Lock Haven, for appellee.

Before ROWLEY, President Judge, and TAMILIA and POPOVICH, JJ.

POPOVICH, Judge:

The appellant, John A. Brendel, appeals the December 15, 1992, order directing the payment of arrearages of $19,400 in child support.[1] We affirm.

The facts are not in dispute and reveal that the appellant and the appellee/Michelle Brendel were married in 1968, a child was born of the marriage that same year (Erich) and the parties were divorced in Harris County, Texas in 1971. The divorce decree made provisions for the appellant to pay $100 in child support beginning on November 1, 1971. The 1971 support order was modified in 1973 to require the payment of $225 per month and provide insurance for the child until the age of 18. Following this, the appellee and child moved to Orange County, California, while the appellant moved to Pennsylvania.

On June 4, 1976, the appellee filed a petition under the Revised Uniform Reciprocal Enforcement of Support Act

[1]. The appellant's wages were attached by order of court dated January 5, 1992, requiring that $93.27 be paid per week on the amount owed.

(RURESA).[2]  As a result thereof, a hearing was conducted by the Court of Common Pleas of Clinton County on November 4, 1976, whereby a child support order of $24.00 per week was entered.  On July 17, 1986, the appellant filed a petition seeking to suspend his support obligation on the grounds that the child-Erich had reached the age of 18 and had graduated from high school.  Next of record is an August 21, 1986, order of court "suspending" the appellant's support obligation and holding that "[n]o arrears [we]re due".  Thereafter, on July 26, 1991, the appellee filed a RURESA petition in Orange County, California claiming that the appellant had failed to comply with the Harris County, Texas support orders of 1971 and 1973 requiring payment of $225 per month.

More particularly, the appellee alleged that the child support payments owed in this matter ran for the period from November 1, 1971, through July 29, 1986.  See *Affidavit of Accrued Arrears* dated July 26, 1991.  The outstanding amount claimed due and owning was $19,400.  This figure was verified by the Orange County Family Support Officer that the appellant's "case ha[d] been opened [by the] District Attorney ... for collection of child support", with copies of the appellant's payment history attached to the RURESA petition.

■  Preliminary objections were filed by the appellant to the RURESA petition, wherein it was asserted that the 1973 Texas order had been modified by the 1976 Clinton County court order, that the 1986 Clinton County court order "suspended" his support obligations and held that no arrears were due.  These objections were dismissed by the court.[3]  An

---

**2.**  23 Pa.C.S.A. § 4501 *et seq.*  Specifically, Section 4509 authorities a proceeding to enforce the duty to pay arrearages.  The Act of October 30, 1985, P.L. 264, No. 66, § 1, 23 Pa.C.S.A. § 4509.

**3.**  In responding to the allegation that the Common Pleas Court's 1976 and 1986 orders "superseded" the 1971 and 1973 Texas orders, the court remarked that it was never asked to alter the Texas orders.  Also, its intention in issuing the 1986 order was merely to "suspend" the earlier 1976 order for child support, and it concluded under the 1986 order that there were no arrearages due under the 1976 order.  See Trial Court's Opinion and Order dated 3/13/92 at 3–4.

Given that the Texas orders were final, and the amount claimed due thereunder had accrued, they were subject to full faith and credit in this

evidentiary hearing followed on October 28, 1992, at which the appellant testified that he was under the belief that the Texas support orders had been superseded by the Clinton County order of 1976. Thereafter, the court issued an opinion and order directing that the appellant pay $19,400 in support arrears. This appeal ensued.

We find that following the evidentiary hearing on the appellee's RURESA petition, the court directed that briefs be filed by both sides in support of their respective positions. In the appellant's case, several issues were briefed, e.g., that the 1976 order issued by the Common Pleas Court of Clinton County for the payment of $24 per week support "modified" the prior 1973 Harris County court order setting $225 per month in child support, and that the appellee was barred by the doctrine of laches from bringing her support action. These are reviewable.

■ The remaining issues appearing in the appellant's appellate brief (numbered I, IV and V), having been raised for the first time in this appeal, are considered waived. *Carney v. Dahlmann*, 425 Pa.Super. 163, 624 A.2d 197, 200 (1993); see also Respondent's [Appellant's] Brief at 1–2 (Record No. 10).

■ In responding to the appellant's contention that the 1976 order of a Pennsylvania court "superseded" and/or "overruled" the prior orders (1971 & 1973) from the State of Texas, we begin by observing that Pennsylvania and Texas, along with forty-eight states, have enacted some form of RURESA to improve and extend the enforcement of duties of support.

RURESA provides in pertinent part that:

A responding court shall not stay the proceeding or refuse a hearing ... because of any ... prior action or proceeding for divorce ... in this Commonwealth or any other state.... If the other action or proceeding ... and

Commonwealth by collection of the appellee. See *Silverstein v. Silverstein*, 246 Pa.Super. 503, 371 A.2d 948, 950–951 (1981) ("... the Full Faith and Credit Clause does protect the right to child support payments that have already accrued under the [foreign court] order and are not retroactively modifiable under the law of the foreign state." (Citations omitted)).

the judgment therein provides for the support demanded in a petition being heard, the court must take into account in placing its support order the amount allowed in the other action or proceeding.

The Act of October 30, 1985, P.L. 264, No. 66, § 1, 23 Pa.C.S.A. § 4530.

Similarly, Section 4531 provides:

*A support order made by a court of this Commonwealth pursuant to this chapter does not nullify* and is not nullified by a support order made by a court of this Commonwealth pursuant to any other law or by *a support order made by a court of any other state ... regardless of priority of issuance, unless otherwise specifically provided by the court.* Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this Commonwealth.

*Id.* at § 4531 (Emphasis added).

The predecessors to the above-quoted statutes were interpreted, which we find germane here, in the following fashion:

It seems clear from these sections [6770 & 6771, now located at 23 Pa.C.S.A. §§ 4530, 4531] that the Uniform Act did not intend an order of support entered in one state to act as a bar to the entry of an order in another state having jurisdiction. The courts of the other state, of course, must take into account the amount of the order entered by the initial state. However, *the statute does not require parties who no longer reside in the state where the initial order was entered to return to the courts of that state in order to obtain enforcement of a parent's duty to support a child.*

*Myers v. Young,* 285 Pa.Super. 254, 427 A.2d 209, 211 (1981) (Emphasis added). Accord *Carney,* supra. It can thus be seen that the thrust of RURESA is not to permit the entry of an order in one state to bar the entry of an order in the state having jurisdiction. *Oman v. Oman,* 333 Pa.Super. 356, 482 A.2d 606, 611 n. 3 (1984).

In essence, RURESA does not bar the entry of multiple orders of support by more than one of the signators to the document. We hold, however, that considerations of comity among the states and fairness to the parties required that the trial court, in computing appellant's arrearages, had to credit amounts paid by the appellant pursuant to the Pennsylvania support order ($96 per month) against amounts accruing for the same period under the 1973 Texas order ($225 per month). See *Silverstein v. Silverstein,* 246 Pa.Super. 503, 371 A.2d 948, 952 (1977). This did occur here from our review of the documents attached to the appellee's RURESA package.[4] Therefore, we do not find any merit to the first of the appellant's claims.

In response to the appellant's laches argument, we adopt as our own the remarks of the trial court; to-wit:

Defendant ... contends that the doctrine of laches applies in this case. Specifically, he argues that since Plaintiff waited until 1991 to endeavor to collect arrearages and medical benefits due between 1971 and 1986, she should be precluded from proceeding with her claims. Initially the Court would note that Defendant has not raised the defense of laches as New Matter in a responsive pleading to Plaintiff's Petition; therefore, he has effectively waived it. Pa. R.C.P. Nos. 1030, 1032. However, even if it was not waived by Defendant, laches would still be inapplicable to the case at bar.

As Defendant correctly notes, Pennsylvania law recognizes that the defense of laches may be invoked when there exists a delay in a plaintiff's pursuance of a claim due to his/her not "exercis[ing] due diligence" and prejudice is thereby caused to a defendant. *Jackman v. Pelusi,* 379 Pa.Super. 361, 369, 550 A.2d 199, 203 (1988). Courts,

---

**4.** The appellant below objected to the absence of a certified record of the delinquent payments to the Harris County, Texas court. N.T. 10/28/92 at 5. This matter was remedied, see Trial Court Opinion at 3, and not raised specifically in the appellant's present appeal.

Also, Common Pleas Court could have obtained a certified statement of all payments made by the appellant to Harris County, Texas. See 23 Pa.C.S.A. § 4528(2).

though, are "extremely cautious in applying" laches to cases "in which ... child support order[s] [have] not been enforced." *Id.* at 367, 550 A.2d at 202. In the instant case, as Plaintiff states in her Brief, "[a]ll the Defendant showed was a mere passage of time" during which Plaintiff failed to pursue her claims. "Delay alone [though], no matter for how long, does not itself establish laches." *Jackman,* 379 Pa.Super. at 369, 550 A.2d at 203. The essential element of prejudice caused by Plaintiff's delay in diligently pursuing her claims against Defendant is missing. Defendant states in his brief that he "will be significantly prejudiced by having to pay" the arrearages because he felt none existed. However, as has been stated, there is no indication from the copies of the Harris County records that the County's file on this case has been purged. As Defendant himself admits in his Brief, "[i]f there were arrearages due and owing under the Harris County order[s], the case would not have been purged and terminated." Thus, Defendant cannot claim prejudice based on non-knowledge of any arrearages.

Indeed, the Court would note that since Defendant endeavored to assert the defense of laches, it was for him to thoroughly investigate the significance of the copies of Harris County records to prove that they did not in fact indicate that the case had been purged, that no arrearages existed, and that he would be prejudiced if he were forced to pay the $19,400.00 amount Plaintiff demands from him. This he has failed to do, merely choosing to rely on his mistaken belief that the 1976 and 1986 Orders of this Court superseded the Harris County Orders and terminated his support obligation thereunder.

Trial Court Opinion at 5–7.

Having reviewed those matters preserved for our consideration and determined that they are without merit, we affirm the order appealed.

Order affirmed.